---

### In re KENNEDY'S ESTATE.

*(Surrogate's Court, Cayuga County.  November, 1888.)*

1. EXEMPTIONS—PENSION MONEY—DEPOSIT IN BANK—INTEREST-BEARING CERTIFICATES.
   One who deposits exempt pension money in bank, taking an interest-bearing certificate of deposit, receives property in return, and the right of exemption is lost.
2. WILLS—CONSTRUCTION—PAYMENT OF DEBTS—EXEMPTIONS.
   Where a testator directs the payment of his debts, and subsequently gives certain specific legacies, exempt pension money belonging to him is appropriated to, and must be applied upon, the debts, in preference to the legacies.

On petition for citation by Henrietta E. Hoxie, asking for a judicial settlement of the accounts of Anna E. Kennedy and Sarah L. Downer, as executrices of Terrence J. Kennedy.  Petitioner is a creditor of decedent, and claims certain property, which legatees contend was exempt, and passed to them under the will.

*Turk & Barnum*, for petitioner and Sarah L. Downer.  *Drummond & Nellis*, for Anna E. Kennedy.  *F. S. Wright*, special guardian of Frank K. Copper.

TELLER, S.  A petition was filed on the 13th day of June, 1888, by Henrietta E. Hoxie, a creditor, asking that the executors be cited to show cause why they should not render and settle their accounts.  A citation was thereupon issued in accordance with the prayer of the petition, returnable July 6th.  The proceeding was continued to July 12th, at which time both executors appeared and filed separately petitions for the judicial settlements of their accounts, upon which citations were issued to all parties who were shown to be interested in the estate of the decedent, and an order of publication was granted.  Upon the 4th day of September, the return-day of such citation, the petitioner appeared by her counsel, each of the executors appeared by counsel, and a special guardian was appointed to represent the above-named infant.  The proceeding after the filing of proof of the service of citation was again adjourned.  Separate accounts were filed by the executors, October 16,

1888, and evidence was thereupon taken. It appears from the accounts and evidence that Sarah L. Downer, one of the executors, has received and sold property of the deceased to the amount of $583.50, and paid out for debts and expenses the sum of $220.34. The petitioner, Henrietta E. Hoxie, obtained a judgment against the executors on the 9th day of January, 1888, for $6,-094.15. There are other debts of the estate, amounting to about $600. · The executor, Anna E. Kennedy, who is the widow of the decedent, received into her possession property, including interest on deposits, to the amount of $2,610.17, made up of cash on deposit upon general account in bank, and the amount of a certificate of deposit, taken as follows: September 12, 1882, the decedent presented at the banking-house of William H. Seward & Co. checks, drawn by T. L. Poole, as United States pension agent, upon the assistant treasurer of the United States, in New York, for pension moneys, to which the decedent was entitled from the government in his own right, to the amount of $3,873.12. He took from the bank a certificate of deposit for $2,000 of this amount. The certificate was made payable to his own order, with interest. Twice the decedent drew the interest upon the $2,000, and each time took a new certificate for the principal sum. The last one was dated September 12, 1883, and was outstanding at the time of his death, October 3, 1883. The executrix, Anna E. Kennedy, presented this certificate at the bank, where it was made payable, on the 11th day of May, 1885, and received the interest thereon, and $200 of the principal, and a new certificate for $1,800, payable to her own order as executrix. The question now arises between the petitioner, as creditor of the estate of Terrence J. Kennedy, and Anna E. Kennedy, individually and as executrix, whether the proceeds of the certificate of deposit which came to the hands of the latter are applicable to the payment of the decedent's debts, it being claimed that the exemption of pension money from levy and sale by virtue of an execution, provided by section 1393 of the Code of Civil Procedure, extends to the property in question, and that the same passes to the legatees named in decedent's will.

It was held in this district, in the case of *Wygant* v. *Smith*, 2 Lans. 185, under the act of 1864, (chapter 578,) that the exemption of soldiers' pay and bounty from execution did not extend to property purchased therewith. The doctrine of that case was fully reaffirmed in *Bank* v. *Carpenter*, 14 Civil Proc. R. 372, as applicable to section 1393 of the Code. In that case a levy under execution had been made upon real estate purchased by the judgment debtor with pension money. The money in the possession of the pensioner was exempt, but it was held that when he voluntarily exchanged the money for other property, which was not exempt, the exemption did not attach to the property purchased. The case at bar involves the inquiry as to whether the pension money was paid away and exchanged for other property, or still retained the character of pension money at the time of the testator's death. Was the taking of an interest-bearing certificate of deposit for the money, the purchase of other property with it, or merely the depositing and receiving a receipt for the money? It was held by the supreme court, in this department, in the case of *Burgett* v. *Fancher*, 35 Hun, 647, that pension money deposited in a bank, subject to a party's check, without interest, and for which a deposit slip had been given, continued to be exempt from execution. The court placed its decision upon the ground that the money was subject to the draft or check of the owner, and was undrawn in the hands of the bankers, the pay and bounty of a soldier. A clear distinction is made in the opinion between such a transaction and a loan of money upon interest to the bankers; also between a mere memorandum and a certificate of deposit, bearing interest, which is made payable upon presentation. The latter, when payable to order, as was the instrument held by the decedent, is in the nature of commercial paper. *Pardee* v. *Fish*, 60 N. Y. 265. It represented not only a deposit, but an investment, and an agreement to pay interest upon a loan. It was property obtained in exchange

for the pension money, and was as distinct from it as would have been a promissory note purchased with the money. It is contended by counsel for the widow that the testator had the right to give away the pension money, and that he has rightfully disposed of the same by his will to the exclusion of his creditors. It may be true that had the testator given the money to his wife before a certificate of deposit was issued, and she had taken the certificate in her own name, that his creditors could not have reached it, but the transaction with the bank was had by the testator personally, and the exemption did not continue to the time of his death.

But had it so continued, the testator would seem to have appropriated the pension money with all his other property to the discharge of his debts before the payment of any legacies. After directing "that the sum of one hundred dollars, and no more, be expended for [his] my funeral expenses," the will proceeds: "(2) That all my debts are paid." The third clause provides a fund to be kept invested, the income of which is to be used in the care of a cemetery lot and vault. The fourth, fifth, sixth, seventh, eighth, and ninth clauses of the will contain specific legacies. By the tenth clause general legacies of money to the amount of $600 are given, with the direction that, "in case there is not enough cash on hand to pay the same, each such legacy is made a charge upon my real estate." A residuary clause then follows, by which all the rest, residue, and remainder of the estate, real and personal, is given to the testator's wife and sister, share and share alike, with provision for the same in case of death of either of them before the death of the testator. There is no specific bequest of the pension money or of the certificate of deposit purchased therewith, but, on the contrary, the provision for a charge of legacies upon his real estate shows that the testator contemplated the possibility that his personalty, aside from the articles of comparatively small value, specifically bequeathed, would not be sufficient to pay his debts and general legacies. I think the direction in the commencement of his will, that all his debts be paid, would operate as a dedication of the pension money to that purpose, if it had continued to be exempt from the claim of creditors at the time of testator's death. · This explanation is deemed proper, on account of the claim of counsel that property exempt from seizure and sale upon execution, in the life-time of the judgment debtor, continues thus exempt after his death, for the benefit of his widow, as held in the case of *Becker* v. *Becker*, 47 Barb. 497. In that case an execution had been issued prior to the death of the judgment debtor. A levy was made after his death, under the statute authorizing a sale in such cases. It was held that as the execution bound the debtor's property from the time of its delivery to the sheriff, and the property in question was then exempt, it so continued after his death in the hands of his widow, who continued to reside in the house occupied by her husband in his life-time with her minor children, for whom she provided. It is not necessary to decide whether the pension money in question would have continued to be exempt from the claims of creditors in the present case, if specifically bequeathed to the widow, or left undisposed of by will, as the testator has expressly appropriated his property to the payment of his debts by the very instrument under which it is claimed his widow may take the same in opposition to creditors. It follows that the avails of the certificates of deposit in question must be applied to the payment of debts, and the petitioner is entitled to share therein ratably with other creditors.